ECF

ORIGINAL

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

FILED
APR 1 4 2004
U.S. COURT OF FEDERAL CLAIMS

GRUNLEY CONSTRUCTION COMPANY )
5010 Nicholson Lane )
Rockville, Maryland 20852 )

Plaintiff )

v. ) Case No. 04-655C

THE UNITED STATES )
c/o Attorney General John Ashcroft )
United States Department of Justice )
Washington, D.C. 20530-0006 )

Defendant )

**COMPLAINT**

Plaintiff alleges:

1. This is an action for an equitable adjustment to Contract No. NAMA-00-SEM-0012, which was awarded by the United States General Services Administration ("GSA") to Grunley Construction Company ("Grunley") on October 2, 2000, for Phase 2 of the renovation of the headquarters building of the National Archives and Records Administration, 700 Pennsylvania Avenue, NW, Washington, D.C. ("the Project").

2. Jurisdiction for this action is founded on the Contract Disputes Act, 41 U.S.C. 603.

3. The Contract Documents include drawings prepared by the Project architect which purport to describe the work required of the contractor.

4. The drawings at sheet AG1 contain symbols to be used in the interpretation of the drawings. Among such symbols is one for concrete masonry, which is depicted by crossed hatch marks.

5. The method chosen by the architect to depict concrete masonry, crossed hatch markets, is that which is normally used by architects in commercial, governmental and institutional construction, and is consistent with custom and usage in the trade.

6. Under "Notes" on Architectural Drawing AG1 is note 1, which states that "Hatch patterns or symbols appearing on individual architectural sheets which are specifically noted to indicate particular materials different than shown above supercede those shown here," and note 2, which states "Refer to hatch legends on individual sheets for graphic indications of where a particular scope of work occurs in a particular area (e.g., Demolition Floor Plans)." There was nothing in the notes to indicate that the architect had depicted new work by any means other than some form of hatched symbol.

7. The symbols shown on drawing AG1 also show that new walls will be depicted by bold lines.

8. Based on the foregoing, a reasonable interpretation of all of the symbols and notes shown on drawing AG1 is that new concrete masonry walls would be depicted by bold lines around crossed hatch marks.

9. The majority of new walls depicted on the Architectural Drawings for new concrete masonry walls were depicted by bold lines around crossed hatch marks, in accordance with the symbols shown on the drawings.

10. For certain new walls in the National Archives sub-basement, the architect depicted what turned out to be new walls as lines with no crossed hatch marks, with an arrow pointing to the line accompanied by the words "8″ CMU". The fact that the lines in question were intended to be bold rather than normal print is not readily discernable, and without crossed hatch marks to call out to the contractor the intent of the architect that

new concrete masonry walls were to be placed at such locations, it was virtually impossible to recognize the architect's intention.

11. Neither Grunley nor its masonry subcontractor included in their bid price the masonry walls depicted only by bold lines and the words "8″ CMU".

12. Where the Government supplies plans to a contractor to be followed in the course of its work, there is an implied warranty as to the accuracy and adequacy of such plans.

13. The fact that most, but not all, of the new walls were depicted by crossed hatch marks actively misled the contractor. The attempt to depict some of the new concrete masonry walls by lines alone, without hatch marks, constituted a latent defect in the plans.

14. After the work of the Project was underway, GSA informed Grunley of its desire to have new concrete masonry walls built in the National Archives subbasement, in areas where the plans revealed only a line (not readily discernable as a bold line) with no hatch marks. Grunley, through its subcontractor, performed such work under protest, at a cost, including 10% markup, of $47,303.74.

15. By claim document dated October 15, 2003, Grunley sought an equitable adjustment to the contract, under the "Changes" clause, for a breach of the implied warranty of accuracy and adequacy of the plans.

16. By letter dated October 23, 2003, and received by Grunley on or about October 28, 2003, a copy of which is attached hereto and incorporated herein by reference, the Contracting Officer issued his final decision rejecting Grunley's claim for equitable adjustment.

17. Grunley has a valid claim against GSA with respect to the adequacy and accuracy of the plans in question, having been actively misled by the use of two alternative methods of depicting new concrete masonry walls in the same set of plans.

WHEREFORE, Grunley Construction Company demands judgment against the United States in the amount of $47,303.47, plus pre-judgment interest, attorney's fees, and such other and additional relief as the Court may deem just and proper.

Dated: April 14, 2004

GRUNLEY CONSTRUCTION COMPANY

By: ______________________

Philip Clark Jones
JONES & ASSOCIATES, LLC
Six Dock Street
Annapolis, MD 21401
(410) 626-0050
D.C. Metro: (301) 858-5723
e-mail: philjones@annapolis.net

FILE

DEC 12 2003
GRUNLEY CONSTRUCTION CO INC

# National Archives and Records Administration

700 Pennsylvania Avenue, NW
Washington, DC 20408-0001

CERTIFIED MAIL – RETURN RECEIPT REQUESTED

October 23, 2003

Mr. Kenneth Grunley
President
Grunley Construction
5010 Nicholson Lane
Suite 1
Rockville, MD 20852

RE: National Archives Renovation
NAMA-00-SEM-0012
Claim for Masonry in Subbasement

Gentlemen:

Reference is made to your October 15, 2003, letter which was received on October 16, 2003 wherein you requested a final decision of the Contracting Officer relative to your claim in the amount of $46,676 for the construction of some masonry walls in the subbasement on NARA contract NAMA-00-SEM-0012.

I have reviewed the matter and find as follows:

a. Notification to the Government of the alleged changed condition first occurred on September 29, 2003 via your letter that transmitted a cost proposal from your masonry subcontractor, MBS, Inc. Until that time the Government was unaware of any alleged changed condition. Construction contract clause number 88 (FAR 52.243-4) of your contract entitled 'Changes' prohibits recovery of any costs incurred more than 20 days before the Contractor provides written notice of the changed condition. The work in question was performed months prior to the date of first notification and, as a result, all of the costs associated with this work were incurred significantly more than 20 days prior to the required notification. This is documented by the work order submitted with your claim indicating that the work was completed on March 1, 2003. Based on the above none of the costs incurred are recoverable.

b. Not withstanding the notification requirements of FAR 52.243-4, your claim is not supported by the contract documents. A review of all of the appropriate contract drawings revealed the following:

1. Drawing AG1 of the contract documents contains the Architectural Materials and Symbols Legend. The legend indicates the symbol for concrete masonry walls (CMU) to be hatch marks –

2. Switchgear Room (SB01) – drawing A1.00 indicates these walls are to be concrete masonry by the material symbol for concrete masonry as shown on drawing AG1. Drawing A2.00A specifies that these masonry walls are to be 8" CMU. Examining these two drawings it is clear that a new 8" CMU wall is to be provided as a contract requirement.

3. Engineer's Room (SB03) – drawing A1.00 indicates these walls are to be concrete masonry by the material symbol shown on drawing AG1. Drawing A2.00A specifies that these masonry walls are to be 8" CMU. Examining these two drawings it is clear that a new 8" CMU wall is to be provided as a contract requirement.

4. Room SB19 – your subcontractor's statement that both you and he interpreted the '8" CMU' notation on drawing A2.00B to be an existing wall is not supported by the contract drawings. Specifically, drawing AD1.00 does not indicate an existing wall between column lines 25 and 26. Drawing A1.00 does reflect a new partition and drawing A2.00B specifies this wall to be an 8" CMU. Accordingly, when all the drawings are considered it is clear that the construction of an 8" CMU wall is a contract requirement.

5 Northwest Switchgear Room (SB02) – drawing AD1.00 does not indicate an existing wall between columns 35 and 36 or between columns 46 and 47. Drawing A1.00 does, however, indicate the symbol for a new concrete masonry partition between these columns in conjunction with a new door leading into this new room. Drawing A2.00B then specifies these walls to be 8" CMU. Between columns 47 and 48 drawing AD1.00 indicates an existing wall and further requires demolition of the wall. Drawing A1.00 then indicates a new partition between these columns and drawing A2.00B specifies this partition to be an 8" CMU. Accordingly, when all of the contract drawings are considered it is clear that these walls are a contract requirement.

6 Columns 2 and 202 – drawing AD1.00 does not indicate an existing wall at the column locations specified in your letter. Drawing A1.00 does, however, indicate a new partition at these locations. Drawings A2.00A and A2.00B specify these walls to be 8" CMU respectively. Accordingly, when all the drawings are considered it is clear that these walls are a contract requirement.

Based on the analysis of each condition as noted above, the Government maintains that there is no changed condition and that when the contract drawings are examined in their totality it is clear that the masonry walls are a contract requirement. In their Analysis of Language of Contract Documents, Cibinic and Nash (Administration of Government Contracts) states that "One basic common law rule for interpretation of contract documents is that a writing is interpreted as a whole, and all writings that are part of the same transaction are interpreted together". Further discussions by Cibinic and Nash on this subject matter indicates that where the "read the contract as a whole" rule is invoked the "boards and courts also rely upon two related principles of interpretation: (1) parts of a contract must be read together and harmonized if at all possible, and (2) preference is given to an interpretation which gives effect to all terms and leaves no provision meaningless". Your interpretation of the contract

NARA's web site is http://www.nara.gov

documents does not consider all of the contract provisions and leaves portions of the contract meaningless. The Government's position as analyzed in item b above, however, gives meaning to all of the contract requirements. The step by step analysis above starts with the smaller scale drawings where the requirements are first identified, i.e. new masonry partition, and proceeds to the large scale drawings where the requirements are further defined as an 8" CMU. When read as a whole the documents are clear as to the requirements for masonry partitions.

Based on the above your claim for additional compensation for new masonry walls in the subbasement is denied.

This is the final decision of the Contracting Officer. You may appeal this decision to the agency board of contract appeals. If you decide to appeal you must, within 90 days from the date you receive this decision, mail or otherwise furnish written notice to the agency board of contract appeals (General Services Administration, GSA Board of Contract Appeals (G), 18th & F Streets, NW, Washington, DC 20405) and provide a copy to the Contracting Officer from whose decision this appeal is taken. The notice shall indicate that an appeal is intended, reference this decision, and identify the contract number. Instead of appealing to the agency board of contract appeals, you may bring an action directly to the United States Court of Federal Claims (except as provided in the Contract Disputes Act of 1978, 41 U.S.C. 603, regarding Marine Contracts) within 12 months of the date you receive this decision.

Sincerely,

Ronald C. Noll
Contracting Officer